**12-4096**
**In the Matter of Immigration**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2012

(Decided October 16, 2012)

Docket No. 12-4096

----------------------------------------------------------------X

**IN THE MATTER OF IMMIGRATION PETITIONS FOR REVIEW**
**PENDING IN**
**THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

----------------------------------------------------------------X

DENNIS JACOBS, Chief Judge:

On August 9, 2012, in Si v. Holder, Number 11-1787, the judges in active service constituted an in banc panel for the purpose of reviewing the Joint Stipulation filed on June 11, 2012, to hold the Si case in abeyance for an indefinite period. Also on August 9, 2012, the Court issued an Order to Show Cause, directing the parties in Si to address "why this Court should not remand this appeal to the Board of Immigration Appeals [hereinafter the "BIA"] until such time as the Government has determined that it will seek to remove

petitioners in the foreseeable future." The parties also were directed to address "whether this Court possesses the inherent power to order remands of that kind with the consent of petitioners only, in order to protect our proceedings and judgments, control our docket, and effectively allocate judicial resources."

In addition to their respective responses to the Order to Show Cause, the parties submitted on August 31, 2012 a second joint stipulation to remand the case to the BIA for administrative closure. By order issued this date under the caption <u>Si v. Holder</u>, Number 11-1787, the Court so ordered the August 31, 2012 Joint Stipulation and dismissed the appeal according to the stipulation's terms.

I

The June 11, 2012 Stipulation recites that, "[u]pon review of this case, the Department of Homeland Security's Immigration and Customs Enforcement (DHS/ICE) component has determined in its sole and unreviewable discretion that this case is a low priority removal case and, therefore, under the present circumstances, the petitioner will not be removed in the foreseeable future." <u>See</u> Memorandum from

John Morton, ICE Dir., to All Field Office Dirs., All Special Agents in Charge, All Chief Counsel, Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens (June 17, 2011) [hereinafter the "Morton Memorandum"].

In banc review of the June 11, 2012 Stipulation was needed. Si is one of more than a thousand cases in our Court that are actually or potentially subject to a future decision by the Government as to whether it will or can remove petitioners if their petitions are denied.[1] As we have previously observed, it is wasteful to commit judicial resources to immigration cases when circumstances suggest that, if the Government prevails, it is unlikely to promptly effect the petitioner's removal.[2]

---

[1]We have been advised that, in many cases, removal following denial of a petition for review is not accomplished because the Government cannot obtain travel documents. The difficulty the Government often encounters in effectuating removal is reflected in the submission to us of numerous petitions to review a denial of a motion to reopen, some filed as many as twelve years after our Court denied a petition to review an initial denial of relief.

[2]See, e.g., Wei Hua Wang v. Holder, No. 09-2678-ag (2d Cir. Sept. 18, 2009) (order to file supplemental memorandum); Zhihui Dong v. Holder, No. 09-2154-ag (2d Cir. Sept. 18, 2009) (same); Yuan Zee Huang v. Holder, No. 09-

3

This state of affairs undermines the Court's ability to "allocate effectively its limited resources and determine whether adjudication of the petition will be merely an empty exercise tantamount to issuing an advisory opinion." Ping Li v. Holder, No. 08-2917-ag (2d Cir. Sept. 22, 2009) (order to file supplemental memorandum). The certified record on appeal contains insufficient information for the Court to see whether a given case might fall within the ambit of the Morton Memorandum. We therefore cannot organize our docket to best allocate our own resources. At the time the June 11, 2012 Stipulation was filed, Si already had been before us once; and on its return, it had been pending for more than a year. Considerable resources--on the part of the Court and the parties--had been invested in the case. It is not lost on us that the executive's (appropriate) wish to conserve its own scarce resources is what impels the Government in Si to seek remand to the Board of Immigration Appeals.

In their responses to the Order to Show Cause, Petitioners Si and Nyo and the Government agree that remand

---

2505-ag (2d Cir. Sept. 18, 2009) (same); Nen Di Wu v. Holder, No. 09-2564-ag (2d Cir. Sept. 17, 2009) (same).

to the Board of Immigration Appeals is appropriate when the Government elects to suspend, at least temporarily, proceedings against a petitioner.  Representatives of the Department of Justice and the Department of Homeland Security also expressed that view at the conclusion of recent policy discussions with members of the Court regarding the application of the Morton Memorandum to cases that reach this Court.

The Government's position and understanding is as follows: "[W]hen the Office of Immigration Litigation ("OIL") determines in consultation with ICE that a case is a low priority matter, the assigned OIL attorney will seek remand for administrative closure. . . . To the extent there are other cases . . . that are not low priority cases under ICE guidelines but where the likelihood of removal may be low for other reasons (such as the difficulty in effecting removals to particular countries), the government is amenable to developing a procedure . . . that would address the Court's expressed concerns for docket control and efficient allocation of judicial resources."  <u>Si v. Holder</u>,

Number, 11-1787, Respondent's Letter Brief in Response to Order to Show Cause (August 30, 2012), p.3.

We agree. This opinion sets out a procedure for all immigration cases pending in this Court that will enable an interested petitioner and the Government to evaluate whether remand to the BIA, according to terms specified below, is appropriate. In so ruling we need not reach, for the time being, the question of our inherent power to remand cases to the BIA as an exercise of our authority to manage the Court's affairs. See Degen v. United States, 517 U.S. 820, 823 (1996); Xiao Xing Ni v. Gonzales, 494 F.3d 260, 267 (2d Cir. 2007).

**II**

In each case in which a certified record on appeal has been filed, the Court will issue an order tolling the upcoming event to be performed in the case for a 90-day period for the parties to determine whether remand to the BIA is appropriate in the case. At any time during the tolled period, either party may end the tolling and resume the appellate process by filing with the Clerk of Court a

letter to that effect with service upon the adversary. Three business days after the date of the letter, time will begin to run for the next event that is due to occur in the case under the Federal Rules of Appellate Procedure or the Court's Local Rules.

At any time prior to the end of the tolled period, a petitioner may move under FRAP 42(b) to dismiss the petition and remand to the BIA.

If neither party has sought to resume the appellate process for any purpose by the close of business on the day the 90-day tolling period ends (or the next business day if the tolling period ends on a weekend or holiday), time will immediately resume running for the next event that is due to occur in the case. A motion for an extension of time, whether to continue remand discussions or to postpone an imminent deadline in the case, will be disfavored and subject to a showing of extraordinary circumstances. <u>See</u> Local Rule 27.1(f)(1).

Except for cases submitted to a panel for decision at least 90 days prior to the date of this decision, the Court

will not issue a decision until after the 90-day tolling period unless requested to do so by one of the parties.

**III**

When granting a motion to dismiss an appeal under FRAP 42(b) and remand to the BIA, we are mindful that it is the petitioner who has sought judicial review, and who is secure from removal during the pendency of the case before the Court. To ensure an opportunity for prompt restoration of this case to our jurisdiction as the petitioners may wish, a remand will be pursuant to the principles and procedures set out in United States v. Jacobson, 15 F.3d 19 (2d Cir. 1994).

While a petition is pending in this Court, the Government's forbearance policy has assured that removal will not occur. We will assume that forbearance will continue while the case remains with the agency following our remand and during its return to this Court, if that should occur. In the event that the Court and a petitioner are advised at any time that this assumption is unwarranted, the petitioner may promptly apply for a stay of removal.

At the time a remand is ordered, the Clerk of Court will issue the mandate in compliance with the Federal Rules

of Appellate Procedure, with the stated condition that either party may reinstate the case in this Court at any time by filing a letter to that effect with the Clerk of Court.  No new petition for review or additional filing fee will be required to restore the Court's jurisdiction.

If the Government decides to resume efforts to remove a petitioner, the Government will notify both the Court and Petitioner at least 21 days before removing Petitioner. Upon receipt of the notice, the Clerk of Court will reinstate the case.

In all pending immigration cases and, until further notice, in all subsequently filed immigration cases, the Clerk of Court is directed to issue an order consistent with this decision on a rolling basis commencing seven days from this date.